**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| LISA WHITAKER, individually and<br>on behalf of all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| | ) | |
| THE WASHINGTON UNIVERSITY D/B/A | ) | |
| WASHINGTON UNIVERSITY PHYSICIANS, | ) | |
| a Missouri Benevolent Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1453, Defendant The Washington University d/b/a Washington University Physicians, a Missouri Benevolent Corporation ("Washington University"), hereby removes this action from the Circuit Court of St. Louis City, Missouri to the United States District Court for the Eastern District of Missouri.  As grounds for removal, Washington University states as follows:

### Introduction

Plaintiff filed this putative class action in the Circuit Court of St. Louis City, Missouri after she was notified about a phishing incident.  Although Washington University notified thousands of individuals outside Missouri of the phishing incident, Plaintiff limited her putative class to only "Missouri residents" in an attempt to evade federal jurisdiction under the Class Action Fairness Act ("CAFA").  However, this is precisely the type of gamesmanship that the Eighth Circuit has rejected.  For a court to have CAFA jurisdiction, there must be minimal diversity, that is, "any member of a class of plaintiffs [must be] a *citizen* of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A) (emphasis added).  And "the term 'citizen' in 28 U.S.C. § 1332 has long

meant something different from 'resident.'"  *Hargett v. RevClaims, LLC*, 854 F.3d 962, 965 (8th Cir. 2017).  "Citizenship requires permanence," *i.e.*, "to have one's *permanent home* in a particular place."  *Reece v. Bank of New York Mellon*, 760 F.3d 771, 778 (8th Cir. 2014) (internal citations and quotations omitted; emphasis in original).  By contrast, "[r]esidency is a more fluid concept. Unlike citizenship, residency does not require an intent to make a place home."  *Hargett*, 854 F.3d at 955 (internal citations omitted).

This distinction is critical.  Here, even a quick review of the putative class definition and other relevant records revealed that two putative class members temporarily resided on a U.S. Army training installation in Missouri, while maintaining permanent homes in North Carolina and the U.S. Virgin Islands.  Accordingly, while the putative class members are Missouri residents as defined by Plaintiff, they are actually citizens of North Carolina and the U.S. Virgin Islands. Minimal diversity therefore exists between these two putative class members and Washington University.  Washington University will also easily be able to establish the other elements of CAFA jurisdiction—that the class consists of more than 100 members and that the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

Despite her artful pleading, Plaintiff will not be able meet her burden to prove that any exception to CAFA jurisdiction applies.  Merely defining a proposed class as "Missouri residents," as Plaintiff does here, has already been expressly rejected as insufficient to establish the local-controversy exception by the Eighth Circuit.  *Hargett*, 854 F.3d at 966 ("[Plaintiff] could have met her burden by producing evidence or by defining her class to include only . . . citizens.  But merely alleging residency was not enough.").  And Plaintiff cannot now amend her pleading to re-define the class to include only Missouri citizens.  *Id.* at 967 ("[T]he concept of redefining a class to trigger the local-controversy exception seems to violate § 1332(d)(7), which says that for purposes

of the local-controversy exception, class citizenship must be determined as of the date of the pleading giving federal jurisdiction.").  Accordingly, this case should remain in federal court where it properly belongs under CAFA.

### Jurisdiction

1.       The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), and the case is removable under § 1453, in that it is a putative class action with minimal diversity, more than 100 members, and more than $5,000,000 at issue exclusive of interest and costs.

2.       The Civil Cover Sheet is attached to this Notice as **Exhibit A**.

### Factual Background

3.       This is a class action lawsuit pending in the Circuit Court of St. Louis City, Missouri, styled *Lisa Whitaker v. The Washington University d/b/a Washington University Physicians, a Missouri Benevolent Corporation*, Case No. 2022-CC09439.  A complete copy of the file from the St. Louis City case is attached to this Notice.  Specifically, attached as **Exhibit B** is a copy of the Petition; attached as **Exhibit C** is a copy of the filings in the state court proceeding.

4.       Plaintiff's Petition generally alleges that one e-mail account containing patient health information was accessed by unauthorized persons on or about January 12, 2020 and January 13, 2020 (the "Phishing Incident").  [Ex. B, ¶¶ 24-25.]  Plaintiff alleges seven separate causes of action against Washington University for this occurrence.

5.       Plaintiff purports to bring these causes of action on her own behalf and on behalf of a class of individuals.  [*See* Ex. B, ¶ 72.]  There are at least 9,293 individuals in the putative class defined by Plaintiff.

6.      In addition to seeking certification of the putative class, Plaintiff's Petition requests the following relief on behalf of herself and the putative class members:  (1) a declaration that "Defendant breached its implied contract with Plaintiff and Class Members;" (2) a declaration that "Defendant negligently disclosed Plaintiff's and the Class Members PII;" (3) a declaration that "Defendant has invaded Plaintiff's and Class Members' privacy;" (4) a declaration that "Defendant breached its fiduciary duty to Plaintiff and the Class Members;" (5) a declaration that "Defendant breached its contract with Plaintiff and the Class Members;" (6) a declaration that "Defendant violated the Missouri Merchandising Practices Act;" (7) a declaration that "Defendant was negligent by negligently hiring, training and supervising its employees;" (8) ordering "Defendant to pay actual damages to Plaintiff and the Class Members;" (9) ordering "Defendant to disseminate individualized notice of the Breach to all Class Members;" (10) "an Order enjoining Defendant from continuing to engage in the unlawful business practices alleged [in the Petition];" (11) ordering "Defendant to pay attorneys' fees and litigation costs to Plaintiff;" (12) ordering "Defendant to pay both pre- and post-judgment interest on any amounts awarded;" and (13) ordering "such other and further relief as may be just and proper."  [Ex. B, p. 29-30.]

## Grounds for Removal

7.      A defendant may remove a state court action to federal district court where the district court has original jurisdiction over the action.  28 U.S.C. § 1441.  This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), part of CAFA.

8.      CAFA "did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction." *Westerfeld v. Ind. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010).  "Once CAFA's initial jurisdictional requirements have

4

been established by the party seeking removal, however, the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies." *Id.*

9.      This action is a "class action" under CAFA because it is a "civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *See* 28 U.S.C. §§ 1453(a), 1332-(d)(1)(B).  Plaintiff brings her class claims "[p]ursuant to Rule 52.08 of the Missouri Rules of Civil Procedure" [*See* Ex. B, ¶ 72], and "[Federal] Rule 23 and [Missouri] Rule 52.08 are essentially identical."  *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 161 (Mo. App. 2006).

10.     Removal of a putative class action under CAFA is proper if three elements are satisfied:  (1) there are one hundred (100) or more members in the proposed class; (2) there is minimal diversity (*i.e.*, at least one member of the proposed class is a citizen of a State different from any Defendant); and (3) the aggregated claims of the individual class members exceed the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(2), (5), and (6); *see also Grawitch v. Charter Communications, Inc.*, 750 F.3d 956, 959 (8th Cir. 2014).   This action satisfies all of these requirements.

a.      The Proposed Class Consists of Approximately Thousands of Individuals. Plaintiff's proposed class includes "All Missouri residents who were patients or the parents/guardians of patients of Defendant since July 31, 2015 and whose PHI and/or PII was disclosed by Defendant to unauthorized third parties."  [Ex. B, ¶ 72.]  Plaintiff further alleges that "On information and belief, the putative Class is comprised of thousands of individuals making joinder impracticable." [*Id.* at ¶ 73.]  Plaintiff also alleges that Washington University sent a "letter to its patients and their parents/guardians" about the Phishing Incident on or around April 8, 2020.

[*Id.* at ¶ 33.]  Indeed, Washington University sent letters to 9,293 patients and the parents/guardians of patients at a Missouri address, and thousands more outside of Missouri.  Therefore, based merely on the facts alleged in Plaintiff's Complaint about the size of the putative class, and bolstered by the number of notices mailed about the Phishing Incident, CAFA's 100-class member requirement is satisfied.

   b. <u>Minimal Diversity Exists</u>.  Washington University is a citizen of Missouri.  [*Id.* at ¶ 15 ("Defendant 'Washington University' is, upon information and belief, a Missouri Benevolent Corporation with its headquarters in St. Louis, Missouri.").]

   The putative class is defined as "All ***Missouri residents*** who were patients or the parents/guardians of patients of Defendant since July 31, 2015 and whose PHI and/or PII was disclosed by Defendant to unauthorized third parties."  [*Id.* at ¶ 72 (emphasis added).]  The Eighth Circuit has "long held that 'resident' does not mean 'citizen'" for purposes of CAFA jurisdiction. *Hargett*, 854 F.3d at 964.  "Citizenship requires permanence," *i.e.*, "to have one's *permanent home* in a particular place." *Reece*, 760 F.3d at 771 (internal citations and quotations omitted; emphasis in original).  By contrast, "[r]esidency is a more fluid concept.  Unlike citizenship, residency does not require an intent to make a place home.  One could, for example, be a resident of multiple states.  But one may be a citizen of just one state." *Hargett*, 854 F.3d at 955 (internal citations omitted).

   Here, a cursory review of the recipients of the April 8, 2020 letter reveals that Missouri resident putative class members are not citizens of Missouri.  For example, at least two putative class members resided at Fort Leonard Wood, a U.S. Army training installation located in Pulaski County, Missouri.  However, a public records search revealed that both before and after the Phishing Incident, one of those putative class members has maintained a permanent home in North

Carolina, has utilities connected there, and has a car licensed in North Carolina. Publicly available social media posts also reveal that this putative class member began employment in February 2020—one month after the Phishing Incident—in North Carolina. A further cross reference to Washington University's records revealed that this putative class member presented a North Carolina driver's license when seeking treatment at Washington University, prior to the Phishing Incident. Additionally, the putative class member provided Washington University with North Carolina home and cell telephone numbers as her contact numbers. Finally, Washington University's records contain correspondence to this putative class member at her North Carolina home, and specifically reference her combat training.[1]

Accordingly, while this putative class member is a Missouri "resident" as artfully pled in the Complaint, she is a legal "citizen" of North Carolina. *See Reece*, 760 F.3d at 771; *Hargett*, 854 F.3d at 955. Minimal diversity therefore exists.

c. The Aggregated Claims of the Putative Class Members Exceed $5 Million Dollars.

Plaintiff requests the following relief, which, aggregated across the putative class of at least 9,293 individuals, places more than $5,000,000 in controversy, exclusive of interest and costs:[2]

---

[1] Although Washington University believes it has met its CAFA burden with just one diverse putative class member, to be sure, a public records search of the second putative class member residing at Fort Leonard Wood revealed that he maintains a permanent home in the U.S. Virgin Islands. A cross reference to Washington University's records also revealed that he provided the University with a U.S. Virgin Island telephone number as his contact number. Publicly available social media posts also indicate that this putative class member is a citizen of the U.S. Virgin Islands.

[2] To be clear, Washington University in no way concedes that any of this relief is available, much less appropriate, in this case. To the contrary, Plaintiff and the putative class members are not entitled to any damages on the theories alleged in the Petition. For purposes of the removal analysis, however, CAFA requires that $5,000,000 be placed into controversy by the *allegations* asserted in the Petition.

i.  <u>Damages</u>:  Plaintiff does not specify the amount of actual damages sought, but, under these circumstances, Washington University is permitted to provide an estimate of Plaintiff's claimed damages by a preponderance of the evidence.  *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009).

Plaintiff alleges that she and the putative class members are at an "imminent, immediate and continuing increased risk of identity theft, identity fraud and/or medical fraud."  [Ex. B, ¶ 71.]  Thus, one way to estimate the value of the claimed damages based on the vague allegations in the Petition is to estimate the reasonable value of credit monitoring to compensate Plaintiff and the putative class for the alleged "imminent, immediate and continuing increased risk of identity theft."  Although Washington University disputes that monitoring for a future harm is a compensable damage, for purposes of an estimation of the amount placed in controversy by Plaintiff, one common provider of credit monitoring—LifeLock—offers credit monitoring for $25.99 per month.  Two years of this monitoring for a putative class of 9,293 individuals, alone, would place in controversy $5,796,601.68.

Further, Plaintiff claims that she and the putative class suffered a "loss of privacy," "the value of their time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach," and "the lost benefit of their bargain when they paid for their privacy to be protected and it was not." [*Id.*]  These nebulous concepts are unquantified in the Petition, but would further add to the damages in excess of CAFA's jurisdictional threshold.

Additionally, Plaintiff claims that she and the putative class incurred "out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft

insurance and/or other Breach risk mitigation products" and "out-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze." [*Id.*] These nebulous concepts are unquantified in the Petition, but would further add to the damages in excess of CAFA's jurisdictional threshold. For example, if reimbursement for any past credit monitoring damages allegation herein were quantified in amounts similar to the LifeLock product described above, this would double the amount in controversy identified on page 8, *supra*.

ii.   Attorneys' Fees:  Plaintiff also seeks to recover her attorneys' fees, which are included to determine the amount in controversy under CAFA. *See Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12951921, at *1 (W.D. Mo. July 10, 2012) (citing *Hartis v. Chi. Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009)).  Notably, statutory attorneys' fees are available under the Missouri Merchandising Practices Act ("MMPA").  Mo. Rev. Stat. § 407.025.1.  When evaluating attorneys' fees for amount-in-controversy purposes, 33% can provide a guidepost of potential recoverable fees. *See Harrington Enterprises, Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1201 (W.D. Mo. 2013).  Here, 33% of only the potential credit monitoring damages discussed above totals $1,912,878.55.  Together with the potential credit monitoring damages of $5,796,601.68, CAFA's jurisdictional threshold is more than satisfied.

iii.   Punitive Damages:  Finally, Plaintiff seeks punitive damages. [*See* Ex. B, ¶ 137.]  The MMPA includes a provision for potential punitive damages (Mo. Rev.

Stat. § 407.025.1).  Courts must consider a potential punitive damages award when determining whether CAFA's amount in controversy requirement is satisfied.  *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013).  Because the amounts in controversy described above more than satisfy CAFA's threshold, the amount of punitive damages likely need not be considered.  That said, any single-digit punitive damages multiplier, *see BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), would only further exceed CAFA's threshold.  *See Bass v. CarMax Auto Superstores, Inc.*, No. 07-0883-CV-W-ODS, 2008 WL 441962, at *1 (W.D. Mo. Feb. 14, 2008) (denying remand under CAFA on an MMPA claim that required a punitive damages multiplier of 6.7x).

11.     Based on Plaintiff's allegations, requested relief, and matters alleged by Washington University, Plaintiff's proposed class claims place in controversy an amount exceeding CAFA's $5,000,000 jurisdictional threshold.  Because there are more than 100 putative class members, minimal diversity, and an amount in controversy exceeding $5,000,000, exclusive of interest and costs, Washington University has properly removed this action from the Circuit Court of St. Louis City, Missouri to the United States District Court for the Eastern District of Missouri, pursuant to 28 U.S.C. § 1453.

### Procedural Compliance

12.     Washington University was served on August 10, 2020, so the filing of this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is within thirty (30) days of receipt by Washington University, through service or otherwise, of a copy of the initial pleading setting forth the claims for relief upon which this action is based.

13.     The Circuit Court of St. Louis City, Missouri is situated within the geographic area comprising the Eastern District of Missouri, so venue is proper in this District.

14.     Neither this case nor a substantially equivalent complaint has been previously filed in this Court.  The Original Filing Form is attached to this Notice as **Exhibit D**.

15.     Promptly upon filing this Notice of Removal, Washington University shall give written notice of the filing to Plaintiff as required by law.  Washington University is concurrently filing a notice attached to this Notice of Removal with the Circuit Court of St. Louis City, Missouri, where this action was originally filed.

16.     Pursuant to 28 U.S.C. § 1446(a), copies of the current state court docket sheet, each pending motion, petition, and related response, reply, and brief (none are pending), and all process, pleadings, and orders served upon Washington University in the state court case are attached hereto as Exhibit C.

WHEREFORE, Defendant Washington University removes the State Court Class Action from the Circuit Court of St. Louis City, Missouri to the United States District Court for the Eastern District of Missouri.

Dated this 9th day of September, 2020.          Respectfully submitted,

*/s/Christopher A. Smith*
Christopher A. Smith, MO# 53266
Elizabeth A. Bozicevic, MO# 59623
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone:  (314) 480-1500
Facsimile:  (314) 480-1505
chris.smith@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Casie D. Collignon (*pro hac vice* pending)
Sean B. Solis (*pro hac vice* pending)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone:  (303) 861-0600
Facsimile:  (303) 861-7805
ccollignon@bakerlaw.com
ssolis@bakerlaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2020, a true and correct copy of the foregoing was

served via email upon:

Phyllis A. Norman, MO# 55887
Adam Graves, MO# 55190
NORMAN & GRAVES LAW FIRM
4505 Madison Avenue, Suite 220
Kansas City, Missouri 64111
Telephone: (816) 895-8989
Facsimile: (816) 895-8988
phyllis@ngkclaw.com
adam@ngkclaw.com

Mitchell L. Burgess, MO# 47524
BURGESS LAW FIRM, P.C.
4505 Madison Avenue, Suite 200
Kansas City, Missouri 64111
Telephone: (816) 471-1700
Facsimile: (816) 471-1701
mitch@burgesslawkc.com

Maureen M. Brady, MO# 57800
Lucy McShane, MO# 57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, Missouri 64108
Telephone: (816) 589-0753
Facsimile: (816) 471-1701
mbrady@mcshanebradylaw.com
lmcshane@mcshanebradylaw.com

*/s/ Christopher A. Smith*
Christopher A. Smith