**2022-CC09439**

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

## IN THE CIRCUIT COURT OF ST. LOUIS CITY, MISSOURI
## 22nd JUDICIAL CIRCUIT

| | |
|---|---|
| **LISA WHITAKER, individually and**<br>**on behalf of all others similarly situated,** | **Case No.:**<br>**Division:** |
| **Plaintiff,**<br>**vs.** | |
| **THE WASHINGTON UNIVERSITY D/B/A**<br>**WASHINGTON UNIVERSITY**<br>**PHYSICIANS**<br>**a Missouri Benevolent Corporation,** | |
| **[Serve:  Registered Address**<br> **1 Brookings Drive, Campus Box 1058**<br> **St. Louis, MO 63130]** | |
| **Defendant.** | |

## CLASS ACTION PETITION FOR DAMAGES

COMES NOW Lisa Whitaker ("Plaintiff"), individually and on behalf of all Missouri residents who are similarly situated for her Class Action Petition for Damages against Defendant The Washington University (hereinafter sometimes referred to as "Defendant" and/or "Washington University"), respectfully states and alleges as follows:

### NATURE OF THE CASE

1.      This is a class action brought by Plaintiff, individually and on behalf of all Missouri residents who are similarly situated (*i.e.*, the Class Members), seeking to redress Defendant's willful and reckless violations of her privacy rights.  Plaintiff and the other Class Members are patients of Washington University d/b/a Washington University Physicians and/or their parents/guardians who entrusted their personal health information ("PHI") and personally identifiable information ("PII") to Defendant.  Defendant betrayed Plaintiff's trust by failing to

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

properly safeguard and protect their PHI and PII and publicly disclosing their PHI and PII without authorization in violation of Missouri common law.

2.      This action pertains to Defendant's unauthorized disclosure of the Plaintiff's PHI and PII that occurred on or about January 12, 2020 and January 13, 2020 (the "Breach").

3.      Defendant disclosed Plaintiff's and the other Class Members' PHI and PII to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect their PHI and PII.

4.      The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' names, dates of birth, medical records, patient account numbers, health insurance information, Social Security numbers, and/or limited treatment or clinical information, such as diagnosis, provider names, dates of service, and other medical information.

5.      Defendant flagrantly disregarded Plaintiff's and the other Class Members' privacy and property rights by intentionally, willfully and recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's and the other Class Members' PHI and PII from unauthorized disclosure.  Plaintiff's and the other Class Members' PHI and PII was improperly handled, inadequately protected, readily able to be copied by thieves and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiff's and the other Class Members' rights, both as to privacy and property.

6.      Plaintiff has standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

7.     Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud.  Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released its 2012 Identity Fraud Report ("the Javelin Report"), quantifying the impact of data breaches.  According to the Javelin Report, individuals whose PII is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft.  Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's and the other Class Members' PII and not yet used the information will do so at a later date or re-sell it.

8.     Plaintiff and Class members have also suffered and are entitled to damages for the lost benefit of their bargain with Washington University.  Plaintiff and members of the Class paid Washington University for their services including them protecting their PII.  The lost benefit of the bargain is measured by the difference between the value of what Plaintiff and the members of the Class should have received when they paid for their services, and the value of what they actually did receive; services without adequate privacy safeguards.  Plaintiff and members of the Class have been harmed in that they (1) paid more for privacy and confidentiality than they otherwise would have, and (2) paid for privacy protections they did not receive.   In that respect, Plaintiff and the members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

9.      Additionally, because of Defendant's conduct, Plaintiff and members of the Class have been harmed in that Defendant has breached its common law fiduciary duty of confidentiality owed to Plaintiff and member of the Class.

10.     Accordingly, Plaintiff and the other Class Members seek redress against Defendant for breach of implied contract, breach of contract, invasion of privacy by the public disclosure of private facts, common law negligence, breach of Missouri Merchandising Practices Act, negligent training and supervision, and breach of fiduciary duty of confidentiality.

11.     Plaintiff, individually and on behalf of the other Class Members, seeks all (i) actual damages, economic damages, and/or nominal damages, (ii) injunctive relief, and (iii) attorneys' fees, litigation expenses, and costs.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over the parties and the subject matter of this action. Jurisdiction is proper because both Plaintiff and Defendant are residents of the State of Missouri and Defendant is a business operating, and licensed under, the laws of the state of Missouri.

13.     Venue is proper in the City of St. Louis, pursuant to RSMo §508.010 because the acts complained of occurred and Defendant is located in the City of St. Louis, Missouri.

## PARTIES

14.     Plaintiff Lisa Whitaker. is an adult residing in Sullivan, Missouri.

15.     Defendant "Washington University" is, upon information and belief, a Missouri Benevolent Corporation with its headquarters in St. Louis, Missouri. Defendant can be served at its Registered Address at 1 Brookings Drive, Campus Box 1058, St. Louis, Missouri, 63130. At all relevant times, Defendant Washington University has owned the entity operating under the fictitious name "Washington University Physicians" that is located at 660. S. Euclid Avenue,

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

Campus Box 8081, St. Louis, Missouri 63110.

## BACKGROUND FACTS

16.     Certain allegations are made upon information and belief.

17.     Defendant Washington University is a health care provider pursuant to state and federal law, providing health care and medical services to the general public, operating at 660 S. Euclid Campus Box 8037, St. Louis, Missouri, 63110.

18.     Plaintiff and the proposed Class Members are patients and the parents/guardians of patients of Defendant Washington University d/b/a Washington University Physicians.

19.     As a part of its business operations, Defendant collects and maintains PII of its patients and also collects PHI and PII of the patients' parents and/or guardians.

20.     Plaintiff was a patient of Washington University and, as a result, provided her PHI and PII to Defendant.

21.     Plaintiff entered into an implied contract with Defendant for the adequate protection of her PHI and PII.

22.     Defendant is required to maintain the strictest privacy and confidentiality of Plaintiff and the proposed Class Members' medical records and other PHI and PII.

23.     Defendant posts its privacy practices online, stating, in relevant part:

We are required by law to protect the privacy of your protected health information, to provide you with notice of these legal duties and to notify you following a breach of unsecured protected health information. This Notice explains how, when and why we typically use and disclose health information and your privacy rights regarding your health information. In our Notice, we refer to our uses and disclosures of health information as our "Privacy Practices." Protected health information generally includes information that

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

we create or receive that identifies you and your past, present or future health status or care, or the provision of or payment for that health care. We are obligated to abide by these Privacy Practices as of the effective dates listed below.

<u>Uses and Disclosures that Require Your Written Authorization</u>

We will not disclose psychotherapy notes without your written authorization unless the use and disclosure is otherwise permitted or required by law.

We will not engage in disclosures that constitute a sale of your health information without your written authorization. A sale of protected health information occurs when we, or someone we contract with directly or indirectly, receive payment in exchange for your protected health information.

We will not use or disclose your protected health information for marketing purposes without your written authorization. Marketing is defined as receipt of payment from a third party for communicating with you about a product or service marketed by the third party.

For situations not generally described in our Notice, we will ask for your written authorization before we use or disclose your health information. You may revoke that authorization, in writing, at any time to stop future disclosures of your health information. Information previously disclosed, however, will not be requested to be returned nor will your revocation affect any action that we have already taken in reliance on your authorization. In addition, if we collected the information in connection with a research study, we are permitted to use and disclose that information to the extent it is necessary to protect the integrity of the research study. https://wuphysicians.wustl.edu/for-patients/for-your-protection/notice-of-patient-privacy-practice-hipaa

24.     On or about January 12, 2020 and January 13, 2020, Defendant disclosed Plaintiff's and the proposed Class Members' PHI and PII to unauthorized third parties (the "Breach").

25.     On or about January 31, 2020, an internal investigation of Defendant confirmed that an unauthorized person gained access to a Clinical Research Supervisor's email account between January 12, 2020 and January 13, 2020.

26.     On or about the period between March 16, 2020 and March 24, 2020, Defendant determined that an email or attachment in the email account that was breached contained some of Plaintiff's and other patients' information, including, but not limited to: name, date of birth, medical record or patient account number, Social Security numbers, health insurance information, and/or treatment or clinical information, such as diagnosis, provider name, and lab results.

27.     The disclosure of the PHI and PII at issue was a result of the Defendant's inadequate safety and security protocols governing PHI and PII.

28.     The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' name, date of birth, medical record or patient account number, Social Security numbers, health insurance information, and/or treatment or clinical information, such as diagnosis, provider name, and lab results.

29.     Upon information and belief, the Breach affected thousands of Defendant's patients and their parents/guardians.

30.     As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PHI and PII of its patients and their parents/guardians, Plaintiff's and the other Class Members' PHI and PII was stolen, compromised and wrongfully disseminated without authorization.

31.     Defendant had a duty to its patients to protect them from wrongful disclosures.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

32.    As a health care provider, Defendant is required to train and supervise its employees regarding the policies and procedures as well as the State and Federal laws for safeguarding patient information.

33.    On or about April 8, 2020 Washington University sent a letter to its patients and their parents/guardians about the Breach.

34.    Defendant is a covered entity pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. § 160.102. Defendant must therefore comply with the HIPAA Privacy Rule and Security Rule. *See* 45 C.F.R. Part 160 and Part 164, Subparts A through E.

35.    Defendant is a covered entity pursuant to the Health Information Technology Act ("HITECH")[1]. *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

36.    The HIPAA and HITECH rules work in conjunction with the already established laws of privacy Missouri.  HIPAA and HITECH do not recognize an individual right of claim for violation but provide the guidelines for the standard of procedure dictating how patient medical information should be kept private.

37.    HIPAA's Privacy Rule, otherwise known as "Standards for Privacy of Individually Identifiable Health Information," establishes national standards for the protection of health information.

38.    HIPAA's Security Rule, otherwise known as "Security Standards for the Protection of Electronic Protected Health Information," establishes national security standards for the protection of health information that is held or transferred in electronic form. See 42 C.F.R. §§ 164.302-164.318.

---

[1] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

39. HIPAA limits the permissible uses of "protected health information" and prohibits the unauthorized disclosure of "protected health information." 45 C.F.R. § 164.502. HIPAA requires that covered entities implement appropriate administrative, technical, and physical safeguards for this information and requires that covered entities reasonably safeguard protected health information from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements of this subpart. *See* 45 C.F.R. § 164.530(c).

40. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

41. HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

42. Under HIPAA:

Protected health information means individually identifiable health information:

(1) Except as provided in paragraph (2) of this definition, that is:

(i) Transmitted by electronic media;

(ii) Maintained in electronic media; or

(iii) Transmitted or maintained in any other form or medium.[2]

---

[2] 45 C.F.R. § 160.103

43.     HIPAA and HITECH obligated Defendant to implement technical policies and procedures for electronic information systems that maintain electronic protected health information so that such systems were accessible only to those persons or software programs that had been granted access rights and who have a working need to access and view the information. *See* 45 C.F.R. § 164.312(a)(1); *see also* 42 U.S.C. §17902.

44.     HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

45.     HIPAA further obligated Defendant to ensure that its workforce complied with HIPAA security standard rules (*see* 45 C.F.R. § 164.306(a)(4)) to effectively train its workforces on the policies and procedures with respect to protected health information, as necessary and appropriate for those individuals to carry out their functions and maintain the security of protected health information. *See* 45 C.F.R. § 164.530(b)(1).

46.     HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* US Department of Health & Human Services, Security Rule Guidance

Material.[3] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." *See* US Department of Health & Human Services, Guidance on Risk Analysis.[4]

47.     Should a health care provider experience an unauthorized disclosure, it is required to conduct a Four Factor Risk Assessment (HIPAA Omnibus Rule). This standard requires, "A covered entity or business associate must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported. The four-factor risk assessment focuses on:

> (1) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers or infectious disease test results);
>
> (2) the recipient of the PHI;
>
> (3) whether the PHI was actually acquired or viewed; and
>
> (4) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[5]

48.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

---

[3] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html
[4] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html
[5] 78 Fed. Reg. 5641-46, *See also*, 45 C.F.R. §164.304

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

49.     The HIPAA Contingency Operations Rule, 45 C.F.R. §164.301(a), requires a healthcare provider to have security measures in place and train its employees and staff so that all its staff and employees know their rolls in facility security.

50.     Defendant failed to provide proper notice to Plaintiff of the disclosure.

51.     Defendant failed to conduct or improperly conducted the four factor risk assessment following the unauthorized disclosure.

52.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, the criminal(s) and/or their customers now have Plaintiff's and the other Class Members' compromised PHI and PII.

53.     There is a robust international market for the purloined PHI and PII, specifically medical information. Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud[6] and medical fraud.

54.     Identity theft occurs when someone uses an individual's PHI and PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/ about-identity-theft.html (last visited Jan. 18, 2013). The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

---

[6]  According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities. Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

55.     The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

56.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name.  Identity thieves also have been known to give a victim's PHI and PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

57.     According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7]  Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[8]

---

[7] *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

[8] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35-38 (Dec. 2010), *available at*

58.     According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours.  *Id.* at 6. In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively.  *Id.* at 9.   Consumers who received a data breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen.  *Id.* at 10.  More important, consumers who were notified that their PHI and PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

59.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.  *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327 (http://www.ssa.gov/pubs/10064.html).  Thus, a person whose PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

60.     Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start.  For some victims of identity theft, a new number may actually create new problems; because

---

http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

61.     Medical fraud (or medical identity theft) occurs when a person's personal information is used without authorization to obtain, or receive payment for, medical treatment, services or goods. *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/resolving-specific-id-theft-problems.html.  For example, as of 2010, more than 50 million people in the United States did not have health insurance according to the U.S. census. This, in turn, has led to a surge in medical identity theft as a means of fraudulently obtaining medical care. "Victims of medical identity theft [also] may find that their medical records are inaccurate, which can have a serious impact on their ability to obtain proper medical care and insurance benefits." *Id.*

62.     The Breach substantially increased Plaintiff's and the other Class Members' risk of being victimized by "phishing." "Phishing" is an attempt to acquire information (and sometimes, indirectly, money), such as usernames, passwords and credit card details by masquerading as a trustworthy  entity  through  an  electronic  communication.      *See* http://www.onguardonline.gov/articles/0003-phishing (last visited Jan. 18, 2013).

63.     Communications purporting to be from popular social websites, auction sites, online payment processors or IT administrators are commonly used to lure the unsuspecting public. Phishing emails may contain links to websites that are infected with malware.  Phishing is typically carried out by e-mail spoofing or instant messaging, and often directs users to enter details at a fake website that looks and feels almost identical to the legitimate one.  When criminals have access to PHI and PII from a large group of similarly situated victims, it is much more feasible to develop a believable phishing spoof email.  They can then get this group of victims to reveal additional private information, such as credit cards, bank accounts, and the like.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

64.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by not obtaining Plaintiff's and the other Class Members' prior written consent to disclose their PHI and PII to any other person—as required by laws, regulations, industry standards and/or internal company standards.

65.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

66.     Upon information and belief, Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to keep or maintain an accurate accounting of the PHI and PII wrongfully disclosed in the Breach.

67.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and the other Class Members' PHI and PII to protect against anticipated threats to the security or integrity of such information.  Defendant's unwillingness or inability to establish and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or their own internal policies and procedures.

68.     The actual harm and adverse effects to Plaintiff and the other Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's above wrongful

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

actions and/or inaction and the resulting Breach requires Plaintiff and the other Class Members to take affirmative acts to recover their peace of mind, and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts—for which there is a financial and temporal cost. Plaintiff and the other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

69.    Victims and potential victims of identity theft, identity fraud and/or medical fraud—such as Plaintiff and the other Class Members—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from data breaches. *See Defend: Recover from Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com. According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. *Id*. at 6.

70.    Other statistical analyses are in accord. The GAO found that identity thieves use PII to open financial accounts and payment card accounts and incur charges in a victim's name. This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, in the meantime causing significant harm to the victim's credit rating and finances. Moreover, unlike other PHI and PII, Social Security numbers are incredibly difficult

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

to change and their misuse can continue for years into the future. The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

71.     Defendant's wrongful actions and/or inaction directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff's and the other Class Members' PHI and PII without their knowledge, authorization and/or consent. As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff and the other Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft, identity fraud and/or medical fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Breach risk mitigation products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of their time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach and (vi) the lost benefit of their bargain when they paid for their privacy to be protected and it was not

## CLASS ACTION ALLEGATIONS

72.     Pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, Plaintiff brings this class action as a class action on behalf of herself and the following Class of Missouri residents who are similarly situated individuals:

> **All Missouri residents who were patients or the parents/guardians of patients of Defendant since July 31, 2015 and whose PHI and/or PII was disclosed by Defendant to unauthorized third parties.**

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

73.    On information and belief, the putative Class is comprised of thousands of individuals making joinder impracticable.  Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

74.    The rights of Plaintiff and each other Class Member were violated in a virtually identical manner as a direct and/or proximate result of Defendant's willful, reckless and/or negligent actions and/or inaction and the resulting Breach.

75.    Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

    a)    Whether Defendant willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the other Class Members' PHI and/or PII;

    b)    Whether Defendant was negligent in failing to properly safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

    c)    Whether Defendant owed a duty to Plaintiff and the other Class Members to exercise reasonable care in safeguarding and protecting their PHI and/or PII;

    d)    Whether Defendant breached its duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

    e)    Whether Defendant was negligent in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

    f)    Whether, by publicly disclosing Plaintiff's and the other Class Members' PHI and/or PII without authorization, Defendant invaded their privacy; and

    g)    Whether Plaintiff and the other Class Members sustained damages as a result of Defendant's failure to safeguard and protect their PHI and/or PII.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

76.     Plaintiff and her counsel will fairly and adequately represent the interests of the other Class Members.  Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests.  Plaintiff's lawyers are highly experienced in the prosecution of consumer class action and data breach cases.

77.     Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PHI and PII.

78.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims.  Plaintiff and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Breach.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.

79.     Class certification, therefore, is appropriate pursuant to Missouri Rule 52.08(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

80.     Class certification also is appropriate pursuant to Missouri Rule 52.08(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

81.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.  Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

## COUNT I
## <u>BREACH OF IMPLIED CONTRACT</u>

82.　　The preceding factual statements and allegations are incorporated herein by reference.

83.　　Plaintiff and the other Class Members, as part of their agreement with Defendant, provided Defendant their PHI and PII.

84.　　In providing such PHI and PII, Plaintiff and the other Class Members entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class members' PHI and PII.

85.　　Under the implied contract, Defendant was obligated to not only safeguard the PHI and PII, but also to provide Plaintiff and Class Members with prompt, adequate notice of any Data Breach or unauthorized access of said information.

86.　　Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their PHI and PII.

87.　　Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft. At the very least, Plaintiff and Class members are entitled to nominal damages.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

**COUNT II**
**NEGLIGENCE**

88.     The preceding factual statements and allegations are incorporated herein by reference.

89.     Defendant owed a duty to Plaintiff and the other Class Members to safeguard and protect their PHI and PII.

90.     Defendant breached its duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's and the other Class Members' PHI and PII.

91.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PHI and PII would result in an unauthorized third party gaining access to such information for no lawful purpose.

92.     Plaintiff's and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft.  At the very least, Plaintiff and the other Class members are entitled to nominal damages.

93.     Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) negligence at common law.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

**COUNT III**
**INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS**

94.     The preceding factual statements and allegations are incorporated herein by reference.

95.     Plaintiff's and the other Class Members' PHI and PII was (and continues to be) sensitive and personal private information.

96.     By virtue of Defendant's failure to safeguard and protect Plaintiff's and the other Class Members' PHI and PII and the resulting Breach, Defendant wrongfully disseminated Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

97.     Dissemination of Plaintiff's and the other Class Members' PHI and PII is not of a legitimate public concern; publicity of their PHI and PII was, is and will continue to be offensive to Plaintiff, the other Class Members and all reasonable people. The unlawful disclosure of same violates public mores.

98.     Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

99.     Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e*., their PHI and PII) without their authorization or consent.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

## COUNT IV
## BREACH OF FIDUCIARY DUTY OF CONFIDENTIALITY

100.    The preceding factual statements and allegations are incorporated herein by reference.

101.    At all times relevant hereto, Defendant owed, and owes, a fiduciary duty to Plaintiff and the proposed class pursuant to Missouri common law, to keep Plaintiff's medical and other PHI and PII information confidential.

102.    The fiduciary duty of privacy imposed by Missouri law is explicated under the procedures set forth in the Health Insurance Portability and Accountability Act Privacy Rule, including, without limitation the procedures and definitions of 45 C.F.R. §160.103 and 45 C.F.R. §164.530 which requires a covered entity, health care provider, to apply appropriate administrative, technical, and physical safeguards to protect the privacy of patient medical records.

103.    Defendant breached its fiduciary duty to Plaintiff by disclosing Plaintiff and the other Class Members PHI and PII to unauthorized third parties.

104.    As a direct result of Defendant's breach of fiduciary duty of confidentiality and the disclosure of Plaintiff's confidential medical information, Plaintiff and the proposed Class Members suffered damages.

105.    Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

## COUNT V
## VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT, MO. REV. STAT. § 407.010 et seq.

106.    The preceding factual statements and allegations are incorporated herein by reference.

107.    RSMo. 407.020 prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce"…

108.    An "unfair practice" is defined by Missouri law, 15 CSR 60-8.020, as any practice which:

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

109.    An "unfair practice is defined by Missouri law,

15 CSR 60-8.020 (1)(B) provides that an "Unfair Practice in General" is

(1) An unfair practice is any practice which –

(A) Either –

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

(B) Presents a risk of, or causes, <u>substantial injury to consumers</u>.

15CSR 60-8.040 provides that an "Unfair Practice is:

An unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in <u>any manner fail to act in good faith</u>.

110.    Plaintiff and Defendant are "persons" within the meaning of section 407.010 (5).

111.    Merchandise is defined by the MMPA, to include the providing of "services" and, therefore, encompasses Healthcare services.  Healthcare services are a good.

112.    Efforts to maintain the privacy and confidentiality of medical records are part of the healthcare services associated with a good.

113.    Maintenance of medical records are "merchandise" within the meaning of section 407.010(4).

114.    Plaintiff's and the Class' goods and services purchased from Washington University were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

115.    As set forth herein, Defendant's acts, practices and conduct violate section 407.010(1) in that, among other things, Defendant has used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of services associated with healthcare services.   Such acts offends the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute 407.020(1).

116.    Defendant's unfair, unlawful and deceptive acts, practices and conduct include: (1) representing to its patients that it will not disclose their sensitive personal health information to an

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; and (3) failing to train personnel.

117.    Defendant's conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful. *See* Mo Code Regs. Ann tit. 15, Section 60-8.

118.    As a direct and proximate cause of Defendant's unfair and deceptive acts, Plaintiff and members of the Class have suffered damages in that they (1) paid more for medical record privacy protections than they otherwise would have, and (2) paid for medical record privacy protections that they did not receive.  In this respect, Plaintiff and members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

119.    Plaintiff, on behalf of themselves and the Class, seek actual damages for all monies paid to Washington University in violation of the MMPA.  In addition, Plaintiff seeks attorneys' fees.

## COUNT VI
## NEGLIGENT TRAINING AND SUPERVISION

120.    The preceding factual statements and allegations are incorporated herein by reference.

121.    At all times relevant hereto, Defendant owes a duty to Plaintiff and the Class to hire competent employees, and to train and supervise them to ensure they recognize the duties owed to their patients and their parents.

122.    Defendant breached its duty to Plaintiff and the member of the Class by allowing its employees to give access to patient medical records to an unauthorized user.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

123.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

**COUNT VII**
**NEGLIGENCE *PER SE***

124.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein

125.    Plaintiff was under the medical care of the Defendant.

126.    The Defendant is a covered entity for purposes of HIPAA.

127.    Plaintiff is a member of the class HIPAA and HITECH were created to protect.

128.    Plaintiff's private health information is the type of information HIPAA and HITECH were created to protect. HIPAA and HITECH were created to protect against the wrongful and unauthorized disclosure of an individual's health information.

129.    The Defendant gave protected medical information to an unauthorized third party or unauthorized third parties without the written consent or authorization of Plaintiff.

130.    The Defendant gave protected medical information to unauthorized third parties without Plaintiff's oral consent or written authorization.

131.    The information disclosed to an unauthorized third party or unauthorized third parties included private health information about medical treatment.

132.    The Defendant's disclosure of the private health information of Plaintiff without consent or authorization is a violation of HIPAA and HITECH and is negligence *per se*.

28

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

133.    Alternatively, Defendant violated HIPAA and HITECH in that it did not reasonably safeguard the private health information of Plaintiff from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements pursuant to HIPAA and HITECH including, but not limited to, 42 C.F.R. §§ 164.302-164.318, 45 C.F.R. § 164.500, *et seq*, and 42 U.S.C. §17902, and was therefore negligent *per se*.

134.    As a direct result of Defendant's negligence, Plaintiff suffered damages and injuries, including, without limitation, loss of the benefit of their bargain, a reduction in value of their private health information, loss of privacy, loss of medical expenses, loss of trust, loss of confidentiality, embarrassment, humiliation, emotional distress, and loss of enjoyment of life.

135.    As a direct result of Defendant's negligence, Plaintiff have a significantly increased risk of being future victims of identity theft relative to what would be the case in the absence of the Defendant's wrongful acts.

136.    As a direct result of Defendant's negligence, future monitoring, in the form of identity-theft or related identity protection is necessary in order to properly warn Plaintiff of, and/or protect Plaintiff from, being a victim of identity theft or other identity-related crimes.

137.    Defendant's conduct was outrageous because Defendant acted with an evil motive and/or with reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to recover punitive damages from Defendant.

138.    Plaintiff, on behalf of themselves and the Class, seek actual damages for all monies paid to Washington University in violation of the HIPAA and HITECH.  In addition, Plaintiff seeks attorneys' fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class

proposed in this Petition, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.  Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representatives and appointing Plaintiff's counsel as Lead Counsel for the Class;

B.  Declaring that Defendant breached its implied contract with Plaintiff and Class Members;

C.  Declaring that Defendant negligently disclosed Plaintiff's and the Class Members PII;

D.  Declaring that Defendant has invaded Plaintiff's and Class Members' privacy;

E.  Declaring that Defendant breached its fiduciary duty to Plaintiff and the Class Members;

F.  Declaring that Defendant breached its contract with Plaintiff and the Class Members;

G.  Declaring that Defendant violated the Missouri Merchandising Practices Act;

H.  Declaring that Defendant was negligent by negligently hiring, training and supervising its employees;

I.  Ordering Defendant to pay actual damages to Plaintiff and the Class Members;

J.  Ordering Defendant to disseminate individualized notice of the Breach to all Class Members;

K.  For an Order enjoining Defendant from continuing to engage in the unlawful business practices alleged herein;

L.  Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

M.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

N.  Ordering such other and further relief as may be just and proper.

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

Electronically Filed - City of St. Louis - July 31, 2020 - 11:15 AM

## JURY DEMAND

Plaintiff, on behalf of herself and the other Class Members, respectfully demands a trial by jury on all of her claims and causes of action so triable.

Respectfully submitted,

**NORMAN & GRAVES LAW FIRM**

*/s/ Phyllis Norman*
Phyllis A. Norman,    MO #55887
Adam Graves,            MO #55190
4505 Madison Avenue, Suite 220
Kansas City, MO 64111
(816) 895-8989
(816) 895-8988 FAX
phyllis@ngkclaw.com
adam@ngkclaw.com

**BURGESS LAW FIRM, P.C.**
Mitchell L. Burgess,  MO #47524
4505 Madison Avenue, Suite 200
Kansas City, MO 64111
(816) 471-1700
(816) 471-1701 FAX
mitch@burgesslawkc.com

**MCSHANE & BRADY, LLC**
Maureen M. Brady, MO #57800
Lucy McShane, MO #57957
1656 Washington Street, Suite 120
Kansas City, MO 64111
(816) 589-0753
(816) 471-1701 FAX
mbrady@mcshanebradylaw.com
lmcshane@mcshanebradylaw.com

**ATTORNEYS FOR PLAINTIFF**